[1 NYS3d 739]

Natalie Yvonne Pan et al., Plaintiffs, v Michael T. Haynes et al., Defendants.

Supreme Court, New York County, January 7, 2015

### APPEARANCES OF COUNSEL

*Kay & Gray*, Westbury (*Theresa P. Mariano* of counsel), and *Law Offices of Park & Nguyen*, Bronx (*John S. Park* of counsel), for Natalie Yvonne Pan, plaintiff.

*Lawrence Heisler* and *Daniel Hardick*, East Northport, for defendants.

## OPINION OF THE COURT

MICHAEL D. STALLMAN, J.

This action arises out of a motor vehicle accident on August 14, 2010, on the westbound off-ramp of the Robert F. Kennedy (RFK) Bridge in Manhattan. It is undisputed that a M60 bus owned by defendant New York City Transit Authority (NYCTA) and operated by defendant Michael T. Haynes rear-ended a vehicle operated by plaintiff Natalie Yvonne Pan. Plaintiff Joanna Chiotis was a passenger in Pan's vehicle.

The complaint alleges two causes of action against defendants. The first cause of action is on behalf of Pan; the second is on behalf of Chiotis.

Defendants' answer asserts a counterclaim against Pan for contribution for Chiotis's injuries and damages. According to Haynes, Pan's vehicle stopped abruptly several times for no apparent reason.

As the counterclaim defendant,[1] Pan now moves for summary judgment dismissing defendants' counterclaim. As a plaintiff, Pan also cross-moves[2] for summary judgment in her favor as to liability against defendants.

## Background

On November 8, 2013, Pan testified at her deposition that she was driving a vehicle belonging to a friend with permission, and that her friend was a passenger in the vehicle. (Mariano affirmation, exhibit D [Pan EBT] at 9.) According to Pan, "I just went over the Triborough Bridge and then as soon as I got off, that's when it happened." (Pan EBT at 13.) Pan testified as follows:

"Q. . . . from the time you exited the ramp until the time the accident occurred, did you pass any streets?

"A. Um, I guess that first big avenue, I don't know if it's Second Avenue or First Avenue that's right

---

1. Separate counsel represents Pan on the defendants' counterclaim.

2. The court notes that plaintiff's cross motion is not a "true" cross motion, in that plaintiff is not seeking relief against the party who made the original motion, i.e., herself. (*See* CPLR 2215; *see* Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2215:1.) However, this defect shall be disregarded because defendants have not claimed prejudice and have had an opportunity to be heard on the merits. (*Sheehan v Marshall*, 9 AD3d 403 [2d Dept 2004]; *Kleeberg v City of New York*, 305 AD2d 549 [2d Dept 2003].)

there—like right off the Triborough but I think it's Second Avenue.

"Q. Did you go through that intersection?

"A. I did and then that's exactly—as soon as I passed the light, that's when it happened. . . .

"Q. From the time you entered 125th until the time the accident occurred, did you stop your vehicle for any reason?

"A. No. . . .

"Q. Okay. Did you tell anyone at any point while you were at the scene of the accident that you stopped before the accident occurred?

"A. Absolutely not.

"Q. Did you stop for any reason prior to the impact occurring?

"A. No.

"Q. Were there any vehicles directly in front of you at the moment of impact?

"A. Um, I don't remember.

"Q. Okay. You don't recall stopping abruptly—

"A. No.

"Q.—prior to the accident?

"A. I recall that I did not stop." (*Id.* at 13-14, 43-44.)

On December 4, 2013, Haynes testified at his deposition that he has been a bus operator at New York City Transit Authority since 1999. (Mariano affirmation, exhibit C [Haynes EBT] at 10.) Haynes stated that, in August 2010, he was assigned to the M60 bus route, and that on August 14, 2010, he was involved in an accident on the westbound off-ramp of the RFK Bridge while coming from LaGuardia Airport. (*Id.* at 13-14, 25.)

According to Haynes, he first observed the other vehicle about a minute before contact, while both vehicles were stopped at the light on the off-ramp heading to 125th Street. (*Id.* at 26.) Haynes stated that he was in the right lane, and the other vehicle was "a car distance away." (*Id.* at 29.) Haynes testified as follows:

"Q. So when the light turned, obviously the light turned green right?

"A. Yes.

"Q. Did the vehicle in front of you move ahead?

"A. The vehicle in front of me moved ahead then stopped.

"Q. How much distance did that vehicle travel when it stopped?

"A. I would say about twenty-five feet.

"Q. Around two, two and half car lengths?

"A. Yes.

"Q. When it was moving, do you know the approximate rate of speed of the vehicle?

"A. No.

"Q. Did it have any directional's [sic] on?

"A. No.

"Q. When that vehicle stopped for a second time after the light, what was the approximate speed of the bus?

"A. I just rolled. I didn't have any speed.

"Q. You did not engage your accelerator?

"A. No, I rolled off. I saw the car stop. I stopped. Right.

"Q. Are we talking about after the light turned green?

"A. After the light changed to green, the individual in the car in front of me rolled off and stopped. I rolled, stopped because I see this car stopping in front of me. She begins to roll again then all of a sudden she abruptly stopped. That's when I impacted the back of the car.

"Q. So she stopped for a second time after the light?

"A. They stopped like several times when the light was green like they didn't know where they were going.

"Q. How many times did that vehicle stop after the light turned green?

"A. About two to three times.

"Q. So the light turns green, that car moves approximately twenty-five feet in front of you, right?

"A. Yes.

"Q. Your bus stops after that first stop?

"A. Yes. I kept my eyes on her closely. They seemed not to know where they were going. . . .

"Q. Well, I mean, at that point, did you think that the vehicle in front of you was driving erratically in

some way? . . .

"A. Yes, I believe that they didn't know where they were going so I needed to stay behind. If I go around and they decide to turn onto 2nd Avenue, then I have a right-side accident. . . .

"Q. When she stopped for the second time after the light, she moved again, right?

"A. Yes.

"Q. What was the rate of speed of the vehicle then at that point?

"A. At that point, they looked like they knew they were going so she accelerated off.

"Q. Can you put a speed to it? . . .

"A. No, I can't. I don't know how fast. I can't judge how fast she took off. . . .

"A. I can't say how fast she was going. The third time she took off she looked like she knew where she was going. Then all of a sudden abruptly she stopped, you know." (Haynes EBT at 29-31, 36-37, 38 [colloquies omitted].)

According to Haynes, he tried to move from the right lane behind the vehicle to the left lane, and "As I maneuvered to go to the left lane, clipped the left portion of her bumper . . . [w]ith my right portion of my front bumper on the bus." (*Id.* at 45.)

## Discussion

"It is well settled that '[a] driver is expected to drive at a sufficiently safe speed and to maintain enough distance between himself and cars ahead of him so as to avoid collisions with stopped vehicles, taking into account the weather and road conditions.' " (*Malone v Morillo*, 6 AD3d 324, 325 [1st Dept 2004] [citations omitted].)

"It ·is well settled that a rear-end collision with a stopped or stopping vehicle establishes a prima facie case of negligence on the part of the driver of the rear vehicle, and imposes a duty on the part of the operator of the moving vehicle to come forward with an adequate nonnegligent explanation for the accident." (*Cabrera v Rodriguez*, 72 AD3d 553, 553 [1st Dept 2010]; *Avant v Cepin Livery Corp.*, 74 AD3d 533 [1st Dept 2010]; *see also Dattilo v Best Transp. Inc.*, 79 AD3d 432, 433 [1st Dept 2010] [A rear-end collision with a vehicle that is slowing

down establishes a prima facie case of negligence on the part of the driver of the rear vehicle].)

As a corollary, a presumption also arises that no negligence on the part of the driver of the lead vehicle, i.e., the plaintiff, contributed to the accident. (*Soto-Maroquin v Mellet*, 63 AD3d 449, 450 [1st Dept 2009].)

Here, it is undisputed that the bus operated by Haynes rear-ended Pan's vehicle while it was stopped or stopping. Defendants argue that summary judgment should be denied because Pan stopped her vehicle three times on the off-ramp "for no apparent reason" (citing *Tutrani v County of Suffolk*, 10 NY3d 906 [2008]).

The Appellate Division, First Department has not been consistent as to whether evidence that the lead vehicle suddenly stopped rebuts the presumption of negligence of the rear vehicle in a rear-end collision. In *Cabrera*, the Appellate Division, First Department unanimously stated, "[a] claim that the driver of the lead vehicle made a sudden stop, standing alone, is insufficient to rebut the presumption of negligence." (*Cabrera*, 72 AD3d at 553.) However, a year later, the Appellate Division, First Department unanimously stated in *Berger v New York City Hous. Auth.* (82 AD3d 531, 531 [1st Dept 2011]): "It is well established that evidence of a rear-end collision with a stopped vehicle constitutes a prima facie case of negligence on the part of the operator of the moving vehicle, *which may be rebutted by evidence that the vehicle in front stopped suddenly*." (Emphasis supplied and citations omitted.)

*Cabrera* follows a rule cited in many First Department cases for over the past decade. (*See e.g. Dicturel v Dukureh*, 71 AD3d 558, 559 [1st Dept 2010]; *Soto-Maroquin v Mellet*, 63 AD3d 449 [1st Dept 2009]; *Francisco v Schoepfer*, 30 AD3d 275 [1st Dept 2006]; *Woodley v Ramirez*, 25 AD3d 451, 452 [1st Dept 2006]; *Mullen v Rigor*, 8 AD3d 104 [1st Dept 2004]; *see Verdejo v Aguirre*, 8 AD3d 63 [1st Dept 2004]; *Malone v Morillo*, 6 AD3d 324 [1st Dept 2004]; *Moustapha v Riteway Intl. Removal*, 283 AD2d 175 [1st Dept 2001]; *Agramonte v City of New York*, 288 AD2d 75 [1st Dept 2001] [applying presumption where front vehicle stops suddenly in slow-moving traffic]; *Mitchell v Gonzalez*, 269 AD2d 250, 251 [1st Dept 2000].)

*Berger* follows a rule implied in a handful of First Department cases over the same time period. (*Cf. Somers v Condlin*, 39 AD3d 289, 289 [1st Dept 2007] ["there was no evidence in the record that plaintiff had acted in such a way as to cause

the accident, such as by stopping suddenly or by veering in front of defendant"]; *Farrington v New York City Tr. Auth.*, 33 AD3d 332, 332 [1st Dept 2006] [no evidence to support driver's assertion that the vehicle in front of him had stopped suddenly, "so as to rebut the presumption of (the driver's) negligence"]; *Sawhney v Bailey*, 13 AD3d 203, 203 [1st Dept 2004] [denying summary judgment because "issues may arise as to whether the driver of the forward vehicle stopped or slowed suddenly"]; *see Barry v City of New York*, 283 AD2d 300 [1st Dept 2001] [upholding jury verdict finding defendant 100% at fault, based on evidence that defendant's vehicle either stopped suddenly or failed to give a proper signal that it was already stopped in front a tow truck, which set off a chain collision].)

Since *Cabrera* and *Berger* were decided, the Appellate Division, First Department has consistently cited *Cabrera* with approval and reaffirmed that a sudden stop, standing alone, is insufficient to rebut the presumption of negligence. (*Cruz v Lise*, 123 AD3d 514, 514 [1st Dept 2014] ["Defendant's affidavit asserting that plaintiff suddenly stopped in front of him, standing alone, was insufficient to rebut the presumption of negligence"]; *Chowdhury v Matos*, 118 AD3d 488 [1st Dept 2014]; *Santana v Tic-Tak Limo Corp.*, 106 AD3d 572, 574 [1st Dept 2013] ["Defendant driver's testimony that plaintiff 'stopped short' and that he could not see her brake lights 'is insufficient to rebut the presumption of negligence' "]; *Androvic v Metropolitan Transp. Auth.*, 95 AD3d 610, 610 [1st Dept 2012] ["That the bus came to a sudden stop was insufficient to raise a triable issue of fact"].)

*Chowdhury v Matos* is instructive. There, the Appellate Division stated,

> "Contrary to defendants' contention that Mohammed's alleged abrupt stop raises an issue of comparative negligence, 'an assertion that the lead vehicle "stopped suddenly" is generally insufficient to rebut the presumption of negligence on the part of the offending vehicle.' Furthermore, even crediting the testimony of defendant Collazo that Mohammed *abruptly stopped in the middle of the intersection and not for a red light*, defendants have failed to proffer a nonnegligent explanation for the rear-end collision." (*Chowdhury*, 118 AD3d at 488 [emphasis supplied and citation omitted]; *see also Malone*, 6 AD3d at 325 ["Regardless of whether defendants were already stopped at the red light, or

stopped suddenly in the middle of the intersection while the light was yellow, we find no nonnegligent explanation by plaintiff for striking defendants' vehicle in the rear under the present circumstances"].)

*Tutrani v County of Suffolk* (10 NY3d 906 [2008]) is inapposite. In *Tutrani*, a police officer driving during rush-hour traffic in the middle lane of a three-lane highway abruptly decelerated from 40 miles to 1 or 2 miles per hour while changing lanes. The plaintiff slammed on her brakes and was able to avoid striking the police officer's vehicle, but the plaintiff's vehicle was then rear-ended by another vehicle. At trial, a jury found that the police officer and the driver of the offending vehicle were each a substantial factor in causing the plaintiff's injuries and apportioned fault at 50% each. The Appellate Division, Second Department reversed, ruling that the police officer's conduct was not a proximate cause of the accident because the plaintiff did not strike the police officer's vehicle.

The Court of Appeals reversed, stating:

> "It is well settled that a 'rear-end collision with a stopped vehicle establishes a prima facie case of negligence on the part of the driver of the rear vehicle.' However, Maldonado's negligence in rearending plaintiff's stopped vehicle does not absolve Officer Weidl of liability as a matter of law. Clearly, Officer Weidl's actions created a foreseeable danger that vehicles would have to brake aggressively in an effort to avoid the lane obstruction created by his vehicle, thereby increasing the risk of rear-end collisions. That a negligent driver may be unable to stop his or her vehicle in time to avoid a collision with a stopped vehicle is 'a normal or foreseeable consequence of the situation created by' Officer Weidl's actions." (*Tutrani*, 10 NY3d at 908 [citations omitted].)

The Court of Appeals ruled that the police officer's operation of his vehicle was a substantial factor in causing the plaintiff's injuries, and reinstated the jury's verdict as to the police officer, which implies that such conduct was also negligent.

The Appellate Division, First Department does not read *Tutrani* as having overruled *Cabrera*. (*See Williams v Hamilton*, 116 AD3d 421 [1st Dept 2014].) Citing *Tutrani*, the Appellate Division, Second Department has ruled that "driving in an erratic manner" raises a triable issue of fact as to whether the plaintiff contributed to the rear-end accident. (*Romero v Al*

*Haag & Son Plumbing & Heating, Inc.*, 113 AD3d 746, 747 [2d Dept 2014].)

However, the facts of *Tutrani* are distinguishable from this case. First, *Tutrani* involved three vehicles, which more closely resembles a chain of collisions rather than a rear-end collision involving only two vehicles. (*See Roman v Sullivan Paramedicine, Inc.*, 101 AD3d 443 [1st Dept 2012] [issues of fact as to whether an ambulance driver provoked a multi-car, rear-end collision by stopping suddenly at entrance ramp to a highway because ambulance driver only noticed the vehicle in front of her after looking up from a mobile device].) *Tutrani* also involved two sudden stops—the abrupt deceleration of the police officer's vehicle, and the plaintiff's sudden braking to avoid collision with the police officer's vehicle. *Tutrani* did not hold that the plaintiff's sudden stop rebutted the presumption of negligence of the driver who rear-ended the plaintiff's vehicle. The Court of Appeals neither addressed nor set aside the jury's finding of fault of the driver who rear-ended the plaintiff's vehicle in *Tutrani*. Indeed, the Court of Appeals referred to the driver who rear-ended the plaintiff's vehicle as "[the] negligent driver." (*Tutrani* at 908.) Neither was the plaintiff found negligent at all in causing the accident. It is not clear how the Court of Appeals would rule in a rear-end collision involving only two vehicles.

Moreover, in *Tutrani*, the police officer's vehicle was traveling in the middle lane of a highway at 40 miles per hour and abruptly decelerated. Unlike *Tutrani*, Pan's vehicle was not traveling on a highway and did not suddenly decelerate from a similarly high speed while performing a lane change. (*Cf. Hernandez v Advance Tr. Co., Inc.*, 101 AD3d 483, 484 [1st Dept 2012] [evidence indicated that lead vehicle "suddenly swerved from the extreme right lane to the far left lane (across two lanes of traffic) and suddenly stopped short" just prior to the collision].) Pan's vehicle had been stopped at a traffic signal in the same lane as Haynes's bus. According to Haynes, Pan's vehicle began "rolling" after the traffic signal turned green. (Haynes EBT at 30.)

Moreover, unlike the plaintiff in *Tutrani*, Haynes had observed the alleged sudden stops of Pan's vehicle, which prompted Haynes to be more vigilant. He testified, "I kept my eyes on her closely. They seemed not to know where they were going." (Haynes EBT at 31.) Therefore, even crediting Haynes's testimony that Pan's vehicle stopped abruptly three times after

proceeding through a green light, defendants have failed to proffer a nonnegligent explanation for the rear-end collision. (*See Chowdhury*, 118 AD3d at 488; *Malone*, 6 AD3d at 325.)

Pan is therefore granted summary judgment dismissing defendants' counterclaim for contribution. Pan is also entitled to summary judgment in her favor as to liability on the first cause of action against defendants. The NYCTA did not deny the allegations of the paragraphs 8 and 9 of the complaint, which allege that, on August 14, 2010, the NYCTA was the registered and/or titled owner of a 2008 Orion bus bearing New York license plate No. M49315, and that Haynes managed, operated and controlled that bus with the NYCTA's permission. (*See* Mariano affirmation, exhibit A [complaint and answer].)

## Conclusion

Accordingly, it is hereby ordered that the motion for summary judgment by plaintiff Natalie Yvonne Pan is granted, and defendants' counterclaim against plaintiff Natalie Yvonne Pan is dismissed; and it is further ordered that the cross motion for summary judgment by plaintiff Natalie Yvonne Pan is granted, and plaintiff Natalie Yvonne Pan is granted partial summary judgment as to liability on the first cause of action against defendants; and it further ordered that the remainder of the action shall continue.